Good morning, your honors, and may it please the court. My name is Brandon Anand, and I'm here on behalf of the plaintiff and appellant Jane Doe. The reason we're here today, your honors, is to ask that this court vacate the verdict below and remand for a new fair trial. There were a number of erroneous evidentiary rulings made, each one of which is the basis for remand, and which in the cumulative presented to the jury an entirely one-sided version of the events, and also confused the issue, the only true issue in the case, which was consent, and prevented them from actually evaluating it. You raise a number of evidentiary issues. I guess the one I want to inquire about is the testimony from Gabriela Chavez. Yes, your honor. If you give me some background on what happened here, because it appears that she was a late witness or a late notified witness in this case, and that the district court judge apparently, from what I can tell in the record, was going to allow her testimony for a limited purpose, and that was to lay the foundation for the photos that were taken in front of a Las Vegas hotel that were ultimately, that photo was going to be the basis for a testimony for an expert regarding damages, I believe. But somehow, though, at some point, that the purpose was expanded of her testimony, and it wasn't limited to that basis. Can you give me some additional details as to what happened there? Yes, your honor, and that's correct. The purpose of her was supposed to be only to lay the foundation for those photographs. And all of this bad character evidence, first of all, we believe that admitting the photographs at all was erroneous, because it was in violation of 412. But also, and there should have been a 412 motion filed 14 days prior to trial, which was never done. And so essentially, that evidence was just sprung upon the court. All this bad character evidence. Tell me the timing. The timing, the evidence came out, and there was never an offer of proof as to what was. Well, but there was something that was filed before on the eve of trial. Her declaration apparently was submitted. On the eve of trial. Yeah, so it wasn't, I mean, you had some notice, and it looked like there was a subject of much discussion. I'm just trying to figure out what was the reason for, at least from your perspective, what were you told in terms of how that was late-breaking? And also explain why that shouldn't have been allowed. I mean, it was admission by a party opponent to this witness with respect to the liability part of this case. Well, the district court actually acknowledged that it was not for liability. It was only for damages. Initially. And, well, but the bad character evidence should have been brought in under 412. The witness testified as to the plaintiff staying at hotels paid for by men essentially would have amounted to calling her a prostitute. But he allowed it to come in based on apparently the briefing. He referred to the briefing by the defendants. And he said for the reasons set out in that briefing, I'm going to allow it to come in. And so at this point, so I just wanted to get your perspective and your views with respect to that. But, you know, it looks like he did a weighing of the testimony based on her declaration on whether the probative outweighed the prejudicial aspects and made a ruling and let it come in. I understand that it's pretty damaging testimony for you, and that's why I wanted to ask you about it. So what's your best argument as to why it shouldn't have been allowed or any explanation regarding it that you think we should know about? I don't believe the district court did any 412 analysis on it and was required to do so. And if you do that 412 analysis, it's clear that this should not have come in. Again, it amounts to basically calling her a prostitute. It's similar to the BKB case. The defendants flouted the procedural guidelines. They didn't file the motion. And they simply sprang the offending testimony on us and the court. I don't believe that the court conducted the proper analysis at all. The trial lasted how long? Twelve days, Your Honor. Yeah, and it seems to me that you're picking on three evidentiary issues in the course of a very lengthy trial, and they're peripheral. The main issue in this case was what happened that night between Doe and the three defendants. And you did a good job of presenting your case that what happened on that evening was nonconsensual, that she was raped. The defendants had, it seems, as I look at the record, powerful defenses to that presentation, which at the end of the day, the jury bought. I mean, you had a nine-day trial. This jury was out, you know, what was it, 15 minutes? And you lost on every single claim. The jury just didn't buy your case. And, you know, no trial is perfect, but your evidence concerning the night in question, I mean, came in, and the jury had an opportunity to hear that. They had an opportunity to hear the defense, and they just didn't buy your case. They stayed out five minutes and, you know, ruled against you. Respectfully, Your Honor, they were out for a few hours, but beside that, the point is consent at the apartment. And the evidence that came in allowed the jury to evaluate a notion of unlimited or standing continued consent. There should not have been any evidence about the Beverly Hills House incident at all. And, in fact, the district court initially ruled that it would come out. So there was highly prejudicial evidence that couldn't have come in, and the jury couldn't evaluate the true issue. The only issue was consent at the apartment and whether or not there was intoxication or not. So I don't believe that's correct to say that they simply bought their version of the case because they didn't hear the full version of the case. No, your theory is they heard too much. Well, both. That's behind each of these evidentiary questions that you're raising, which are all reviewed for abuse of discretion. You know, this is your notion that the jury heard too much. Well, no, also, your Honor, that there was evidence that was favorable for the plaintiff that was excluded, such as the defendant's prior request for group sex, which were denied flat out by the plaintiff. That was not allowed to be brought in. The court excluded text messages, accusations to the defendants where they responded with silence. The court excluded text messages where Ms. Doe expressed extreme emotional distress. So there were a number of things that were excluded that were favorable. Look, you won some things. You didn't win other things. That's just how trials go. Well, that I understand, your Honor. But what should not have come in is any evidence of a sex belt, which was mentioned dozens of times. And I think this Court's several rulings support that, support that the sex belt evidence should not come in. The sexual photos should not have come in. The sexually suggestive text messages should not have come in. They came from your client. But they're barred under Rule 412. Some of them are. Some of them are not. All of them are under a number of these Court's rulings that we cited in this brief, including BKB and Wood. None of those items should have come in. Counsel, Judge Gould, if I could. Yes, Judge Gould. Just want to confirm something that Judge Parker had mentioned. Is it correct that all these evidence issues are reviewed for abuse of discretion? Yes, your Honor. Okay, thank you. Do you want to reserve the balance of your time? I wanted to reserve five minutes. Are there any other questions that your Honors have at this point? None here. Okay, thank you. I'll reserve the balance of my time. Okay. Good morning, your Honors. Mark Bowdy for all three respondents. My co-counsel, Mr. Monaco, did not make the trip. And two of the respondents, Ryan Allen and Randall Hampton, are here with us today. This appeal is utterly frivolous in every way. Talk to me about Ms. Chavez, would you please? I'd be happy to do so. I think if the Court scrutinizes the transcript of Gabriela Chavez, both with respect to the 403 weighing done by Judge Fitzgerald and my examination, she was called for three reasons. Why was it so late? It seemed like there was a flurry of attention and notice with respect to Ms. Chavez late breaking into the case. I don't think Ms. Chavez was late. She was one of, I think, out of the fourteen witnesses in a two-week jury trial, she may have been one of four for who there were no depo transcripts, but the Rule 16 pretrial procedures had the basics of what we were going to elicit from her, disclosed to the opponent, and what we put on. And that's what I wanted to find out, because I was having trouble putting this in context, because what I did see is that the judge seemed to initially only allow her testimony for the limited purpose of laying the foundation for the pictures. In fact, he gave the jury a limiting instruction regarding that. So there's a little bit of confusion in the record regarding her testimony, and then all of a sudden, after the admonition, she's allowed to testify, and the judge doesn't really release the jury of the admonition from what I can tell her, you tell me. So if you could just fill in some of the blanks here, I'd appreciate it, just to get a better sense, because as you will acknowledge, it's pretty damning testimony. Actually, in the overall optics of the case, because she was probably in the last two or three days, I would say that based on my observations, the case was over by then. But what we wanted her for, and this was in the Rule 16. She's the only person that I thought that said, you know, that the plaintiff told her that she was basically lying. I don't think you had that testimony from anyone else. That's pretty prejudicial. I understand it's also probative. I would like a little more information about Ms. Chavez and how she came about and how come this ruling that was only limiting initially. Sure, happy to do so. So when Ms. Chavez testified, the plaintiff had already been cross-examined twice, and all three respondents had already testified, and I believe both toxicologists had already testified. But in any event, what we elicited from her, and I believe this was considered over a 403 objection, and this isn't even a close call, so it's not just that it's not an abuse of discretion. The court made a correct evidentiary ruling, and it's obvious. What we elicited from her is very simple. She went to Las Vegas with Jane Doe. They had a great time together. Jane Doe had fun together. This was relevant because Jane Doe's testimony was, in simple terms, I'm so emotionally distressed and depressed that I can't function or go out socially. The Las Vegas trip was after the incidents, is that correct? Two weeks after the incidents. Okay, that's why I just want to put some context. Go ahead. And we elicited from Gabriela Chavez that during the Vegas trip, these are two girlfriends talking, Jane Doe told her that she had consensual sex that night with all three men and that she was disappointed that Derek Rose wasn't more jealous about the fact that she was free to have sex with the other two men. Okay, now, secondarily, if you look closely at the transcript, what you'll see is that what appellant's counsel calls bad character evidence, a lot of that came out on a very sloppy cross-examination of Ms. Chavez, where I was not doing anything other than sitting at counsel table watching with amazement as much worse facts came out that I did not elicit. But my recollection is. Who elicited them? Counsel. Counsel, appellant's counsel, not me. My recollection is. What were those facts? I remember a series of answers coming out of Ms. Chavez's mouth during questions by appellant's counsel to the effect that Jane Doe was a pathological liar and revisiting this topic in a way where it kept going on and on and on. And I've been doing this for a long time. And that was a witness where the cross-examination should have been three minutes at the most. Yeah, but you're still not telling me about the timeline. Why was there all this activity regarding her declaration right before the trial and then the judges during the trial making inconsistent or what seemed to be a little bit slightly inconsistent rulings, saying this was only going to be limited for the lay in the foundation? Explain that to me. Sure. I don't have any recollection at all of there being anything unusual or belated about this. I think that the Rule 16 disclosures as to this witness's testimony were very simple and very straightforward. And appellant's counsel objected on 403 grounds and tried to exclude some of the party admissions. And I think my statement to the judge was simple. It was if two girlfriends go to Las Vegas three weeks after an evening of five hours of consensual sex involving four people and the plaintiff says to her girlfriend, it was a fun night. The sex was consensual. I just wish she was more jealous about it. Why did the district court give a limiting instruction saying it was just going to be used for laying the foundation for the picture? I don't remember that at all. In fact, the court. That's what's in the record. It tells the jury the testimony of Ms. Chavez is going to be limited just for the laying of the foundation. And then at some point later, there appears to be some discussion. And then having to look really closely, you see, well, I'm going to let this in, but for the reason that the defense states in their memo. That's it. But he never really said anything else. And so I just was trying to figure out what's the back story here, what's the real story here of what was going on. I believe there was a 403 hearing. It may have been in a sidebar that was fairly straightforward about the simplistic issue of party admissions by Jane Doe on the issue of consent. They are highly probative. Not particularly significant in the context of a case where the jury's primary focus is going to be on evaluating the credibility of Jane Doe and the three respondents. But nonetheless, when a plaintiff in this sort of a case makes an admission of consent three weeks later to a close girlfriend, it obviously comes in. I apologize to the court. I don't remember the optics of Ms. Chavez being particularly significant, and she was not a long witness. She was late in the case, and I don't believe she was on the stand for more than maybe 35 minutes total, probably about eight minutes from our end. It looks like the district court had to make some decisions about what statements were going to come in, what statements were not going to come in. And at one point he said, well, anything before this date I'm going to find can't come in because then she might have had a motive to lie, that the plaintiff may have had a motive to lie. But he also said certain included in that timeline was, well, that was after she talked to her counsel or her lawyer. So that's not going to come in because she would have a motive to lie. Can you tell me why that was appropriate? Sure. I can tell you why those rulings were 100 percent correct. And I think this is clear from the briefing, but you may have just mixed together what is being referred to as the past refusals, which are texts from the May to July time period, and then a series of texts in the September time period. I'm going to address both one at a time. The past refusal texts is very counterintuitive. We wanted those texts in and felt they were relevant to showing our consent defense in part because there's a dialogue between Respondent Rose and Jane Doe. They've had a 20-month consensual relationship that is sexual, only what 20-somethings call a friends with benefits relationship, with some group encounters, one in Chicago involving another woman and some discussions about group encounters involving additional men. The judge decided under 412 to protect Jane Doe to exclude all of those alleged past refusal texts. The reason we wanted them in is twofold. They contained powerful admissions by Jane Doe concerning being upset about what she perceived to be a breakup, and two, some language that very much indicated a potential willingness to entertain group encounters. My point being, it was excluded to protect Jane Doe. That doesn't exactly sort of show up immediately in the briefs, but I mean it was a smart move by a trial judge trying to apply a good evidentiary rule, the Rape Shield Statute, to protect the alleged victim. Just to be clear, my question was not about the past refuses, it's about the later texts. Sure. So the later texts, very smart, very correct ruling because none of those texts have any relevance to consent, and none of them contain anything even close to a party admission by any of the three Respondents. And what the judge realized was this is a plaintiff who, after the follow-up day at work, remember this is a plaintiff where the undisputed record is both toxicologists said she was sober. She opened the front door to the street, the apartment door, and the bedroom door, woke up the next morning smiling, acting normal with her roommate. Her roommate was present during the entire encounter and then went to work and put in a full day of work, but then talked to a lawyer. The judge's view was since this has nothing to do with consent or that evening, and some of these emails look very much like when she's demanding cab fare after the fact, she's starting to posture and turn this into an extortion scenario, and it has nothing to do with consent, I am not going to confuse the jury with evidence that appears to have no probative value at all, but is grossly outweighed by the prejudicial impact and the confusion factor. This is, again, a good ruling to protect the plaintiff because we were okay with a lot of those texts coming in because she lied repeatedly on the witness stand and in her texts about buying a sex belt, which she didn't buy, about going to a girls-on-girls store, which didn't exist, about accusing her friend Groff of asking for ecstasy when Groff on the stand admitted, I didn't ask for any ecstasy and I don't do ecstasy, and then demanding money from Mr. Rose the day after in three or four of those texts, which were excluded. And what the judge did is he said, I'm not going to tie up this trial on a bunch of non-probative texts that each side will try to use to their strategic advantage. It's an all or nothing scenario because I don't see much probative value here and it's not related to consent on that night. It's out for all of you. Again, I want to be clear here. The standard of review, abuse of discretion, governs. These are correct evidentiary rulings. I'm not here defending close calls. I'm not here defending one or two small errors. I've got a record with a really smart trial judge who got every issue right and that's why this appeal is obviously frivolous and all of these evidentiary arguments are wholly without merit and it's the reason we have asked for $5,000 in sanctions against counsel only, not Jane Doe. We were very respectful of Jane Doe throughout this trial, including at closing argument. We even said to the jury during closing, we're not here to judge anybody for their sexual practices or their decisions in the bedroom. This is a case involving the issue of consent and consent at 10 p.m. at a Beverly Hills house does not mean there was consent at 3 a.m. That's something the men have to prove to you. This appeal, of all the appeals you've heard so far today, is frivolous, bogus. 95% of the trial record was omitted by appellant's counsel. Think about that. You come to court on a fake appeal and all you do is cherry pick the record and go, I'm just going to make my appeal like this. Any text that was admitted that I don't like, I'm just going to say, that's an abuse of discretion and any text that was excluded that I think I could have argued in a particular direction, that's abuse of discretion. That is what a sham this appeal is. That's why they omitted 95% of the trial transcript. That's why there were seven delays and multiple violations of your rules in certifying the record. Thank you very much. Thank you. Your Honors, I want to first start with further addressing Ms. Chavez. First of all, there was a misrepresentation just made stating that I wasn't the lead trial counsel, it was Mr. Joaquin McCoy, but he did not elicit the testimony of being a pathological liar. Mr. Bouty did. It's on ER 176. He said, is Jane Doe a pathological liar? The witness testified definitely. Now, to start at the beginning, there was a Rule 26 violation. Why wasn't the jury entitled to hear that? Well, aside from it being impermissible. This is a credibility case. This is her friend talking about her. Isn't that the kind of ‑‑ I understand it may not have been helpful to you, but explain to me why that wasn't helpful to the jury. Well, it's impermissible expert testimony, and it's bad character evidence that wasn't found. It wasn't expert testimony. She's her friend. She has demons with her. She wasn't her friend at that point, but, Your Honor, the district court said that ‑‑ Long-time associate, right? She was to say when and how the pictures were taken. Clearly, that went beyond the scope. And, in addition, the district court excluded text from earlier in time to both Mr. Allen and Mr. Rose. So why would this testimony from Ms. Chavez come in if those text messages did not come in? There was also rebuttal denied. We asked for rebuttal to Ms. Chavez's testimony, and the district court denied it. I also want to ‑‑ You've gone on at length about why you think these ‑‑ why you disagree with these rulings that this trial judge made during the course of a two‑week trial, but we haven't heard a word from you as to why any of them amounted to abusive discretion. In other words, they were so incorrect that no sentient trial judge would make them. It's heavy burden. I understand, Your Honor, but, again, under the Ninth Circuit cases, they should be excluded. The sex belt evidence should be excluded. You know, would ‑‑ this court held in would. I mean, even images should be excluded. There was a lot of talk in this case about sex. What's the big deal about the sex belts? It's impermissible under the Ninth Circuit cases as well as the other cases. Why? Because it is ‑‑ it will taint the jury's mind, and when they hear testimony of that effect, they cannot think about the actual issue. But it was relevant with respect to some credibility issues that had been raised, and then the district court limited the evidence to the text, not to pictures or to the actual item itself, and I think instructed the jury to say any testimony about the specifics of the sex belt, any pictures, or at least said this on the record to the lawyers, any testimony about the specifics of the sex belt, any pictures, specifics of what activity it is used for, et cetera, it is sufficient for the jury to know that it was some sort of sex toy and that's it, brought into the house. He limited all of that, and it appeared that it was relevant to whether or not she was being credible, which the defendants get to question, and when we have an issue of consent. Well, it was cumulative in that regard. They did not need to bring this out for the credibility issue. They were already allowed to ‑‑ And that's an argument that you can make, but at this point in this litigation, you have to show that that was an abuse of discretion, and that's somewhat of a high bar at this point, and so I'd like to hear your best argument as to why it was an abuse of discretion. Well, it's just not relevant to the issue of consent at all, and again, it's cumulative in the regard of credibility, and on top of that, combined with the images that were barred under 412, the court actually acknowledged that the images were barred under 412 and just didn't perform the analysis ‑‑ excuse me, the text messages were barred under 412, didn't perform the 412 analysis, and were brought in for impeachment. So in the cumulative, it completely tainted the trial. I'm somewhat embarrassed to confess my naivete, but what exactly is this sex belt that your client had? What is a sex belt? It's some sort of object that's put on a woman, I suppose, for leverage. I'm sorry? I don't understand. I suppose for leverage, for leverage in a sexual act. I only have a limited understanding of it as well, but the real point, Your Honor, is that this was a gift given to her, and she was bringing it as a gift to Mr. Rose. It has nothing to do with the issue of consent. The district court even acknowledged she could have brought homemade cookies. It has nothing to do, and also it's very important to note that none of the defendants even saw it or alleged it was used, which is why it's highly prejudicial. None of them saw it or alleged it was used. Two of the defendants stated that they hadn't even heard about it before, during, or after the incident. And so, again, in the cumulative, because not only should the sex belt have been excluded, but the entire Beverly Hills House incident should have been excluded. You can't have ongoing consent. So the relevance of consent at the Beverly Hills House, which was disputed. Look, all you're doing repeatedly is simply to share with us your version of how the evidentiary rules should have gone. And basically, when you lose them, you disagree. And I get that. That's your job. But it's not particularly helpful to us, because it doesn't address what we have told you we're concerned about, which is your case for abuse of discretion. The fact that you don't like them is of no moment. I understand, Your Honor, but they all went in favor of the defendants and against the plaintiffs. Well, that's not true. I spent some time with the record, and a lot of these evidence, you know, I've been a district court judge. A lot of these evidentiary rulings, particularly in the context of cases like this, you know, are difficult ones. Balancing the protection of Jane Doe from scurrilous accusations on the one hand and the protection of these men from baseless charges, serious, extremely serious, baseless charges. And, you know, the judge has a — that's what he gets the big bucks for. I understand, Your Honor, but, again, in the cumulative, they went entirely in favor of the defendant. I also want to mention another misrepresentation that was just made. Their toxicologist did not say that Ms. Doe had no alcohol. His report stated that she had at least 0.2 BAC. So I just have to — But no toxicologist found any trace of so-called date rape drugs. Is that right? They couldn't. There wasn't an opportunity to do that. Neither of them performed tests for that. Okay. Judge Gould, do you have any other questions? No questions. All right. Thank you very much. Thank you both for your arguments here today. The case of Jane Doe v. Derrick Rose et al. is now submitted.
judges: Parker, Gould, Murguia